T.C. Summary Opinion 2008-159

UNITED STATES TAX COURT

RANDOLPH BRUCE AND RITA C. BEASLEY, Petitioners $v$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1023-07S.                    Filed December 23, 2008.

Randolph Bruce and Rita C. Beasley, pro sese.

Spencer T. Stowe, for respondent.

GERBER, Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court,

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2002, the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

and this opinion shall not be treated as precedent for any other case. Respondent determined a $2,226 deficiency in petitioners' Federal income tax for 2002. The issues for our consideration are: (1) Whether petitioners are entitled to claim a loss in connection with their activity involving the rental of a powerboat; and (2) whether petitioners are entitled to certain business deductions in amounts greater than those respondent allowed.

### Background[2]

At the time their petition was filed, petitioners resided in California. Petitioners were married during 2002. During 2002 Mr. Beasley was a crime scene investigator with the San Bernardino County Sheriff's Department. Petitioners owned two single-family homes that they rented during 2002.

Mr. Beasley enjoyed fishing. Because he was approaching retirement, he planned to start a sport fishing charter business. It was his goal to take out fishing charters and/or to sublease a boat to others. He purchased a boat that was located in Alabama during June 2001. The boat was 32 feet long and had two staterooms so that six people could sleep on the boat. The boat was delivered to Mr. Beasley during July 2001. When the boat arrived, he discovered that there was a problem with odors

---

[2] The stipulated facts and the accompanying exhibits are incorporated herein by this reference.

emanating from the sanitation system.  The odor problem limited the amount for which the boat could be rented.  Ultimately, the entire sanitation system had to be replaced and the boat had to be thoroughly cleaned.

Blisters discovered in the fiberglass hull early in 2002 caused the boat to be out of the water one-third of that year.  At this point, Mr. Beasley discovered that he would have to be specially licensed to take out charters consisting of six persons.  Instead of taking out charters, he attempted to place the boat in a harbor where it could be rented as sleeping quarters, like a hotel, where the boat remains in the harbor slip.  That effort was also unsuccessful while the odor problem continued.

For 2002 petitioners reported $2,800 in income from boat rental on a Schedule C, Profit or Loss From Business.  Petitioners also reported $22,275 in deductions for a claimed loss of $19,475 from the boat rental activity for 2002.  Most of the $22,275 comprised depreciation, mortgage interest, maintenance, and slip fees.  The rental income did not increase for 2003.  The "rentals" consisted of payments by petitioner's brother and friends in exchange for sharing his boat for a fishing trip.

During 2002 Mrs. Beasley operated a daycare business out of petitioners' home.  Petitioners claimed $7,118 for food expenses

in connection with the operation of the daycare business. Respondent, after audit, allowed one-half or $3,559. The remaining food expenses were disallowed on the basis that petitioners had not shown the amounts were paid or incurred and were ordinary and necessary business expenses. Petitioners computed the $7,118 as a percentage of their total food expenditures. They had receipts for food totaling $11,434, which represented food for the daycare children as well as for petitioners. They determined that approximately 70 percent or about $8,118 was for business and the remainder was for personal use. To be on the safe side, they decreased that amount by $1,000 and claimed only $7,118.

During 2002 petitioners had a daughter, age 18, and a son, age 19, who lived at home and assisted Mrs. Beasley in the operation of the daycare business. Normally, there were 13 children being cared for in the daycare business, and Mrs. Beasley's son and daughter assisted with the children. As an example, the daughter changed diapers and the son supervised the children in the yard. The amount of time that was spent assisting was loosely kept track of, and petitioners would pay their children in cash and by purchasing items for them. During 2002 both children were claimed as dependents of petitioners.

At the end of the year petitioners would go through check and credit card records and isolate payments made to and

purchases made for their children.  Using this method, petitioners determined that their son received payments and benefits of $2,898, which petitioners reduced by approximately $1,000 to account for items that petitioners would have purchased for him as part of his support.  Likewise, petitioners determined that their daughter received payments and benefits of $4,097, which petitioners reduced by approximately $3,000 to account for items that petitioners would have purchased for her as part of her support.

Many of the items petitioners purchased for their children included medicine, car insurance, automobile-related items, healthcare, and payments to a college.  Petitioners deducted $3,145 as the cost of labor for their children's assistance in the daycare business, and respondent disallowed the entire amount.

Petitioners deducted $4,502 as a business expense for use of their motor vehicles, and respondent allowed one-half or $2,251. During 2002 petitioners owned two automobiles and one truck. The $4,502 deduction was based on an estimate of the percentage of business mileage times the total annual mileage for each of the two vehicles.  Using that method, petitioners claimed 70 percent of the total mileage of their truck and 15 percent of the total mileage of one of their automobiles.  Petitioners did not keep specific records as to whether the business mileage was for

the boat rental, daycare, or Mr. Beasley's noncommuting transportation in connection with his job.

## Discussion

### I. Boat Rental Adjustment

The issues involving the $19,475 loss claimed with respect the boat are somewhat involved. Because the income from the boat was shown as being derived from rentals, respondent determined that the resulting loss was from a passive activity within the meaning of section 469. With certain exceptions, losses from passive activities cannot be deducted from nonpassive income (such as wages) but may be carried forward and deducted against future years' passive income. An exception involves a rental real estate activity as defined in section 469(i). Rental real estate losses are deductible from nonpassive income in amounts that do not exceed $25,000. Sec. 469(i). Respondent determined that Mr. Beasley's boat was not "real estate" within the meaning of section 469(i) and, therefore, the provisions of that section did not apply. Petitioners had already claimed losses with respect to the two real estate rental properties, so that the claimed boat loss could not be absorbed or used to reduce that passive-activity income.

In the event that the claimed losses from his boat do not come within the section 469(i) provisions, Mr. Beasley argues, in the alternative, that his boat activity was a nonpassive

business.  In that event, respondent contends that petitioners have not shown that their boat activity was a nonpassive activity and, if they do, respondent alternatively argues that petitioners failed to substantiate the amounts claimed.

Section 469(i), in pertinent part, provides:

> SEC. 469(i). $25,000 Offset for Rental Real Estate Activities.--

> (1) In general.--In the case of any natural person, subsection (a) shall not apply to that portion of the passive activity loss or the deduction equivalent * * * of the passive activity credit for any taxable year which is attributable to all rental real estate activities with respect to which such individual actively participated in such taxable year * * * .

Petitioners contend that there are examples in the law where a boat is treated in the same manner as "real estate" and that approach should carryover into section 469(i).  We cannot accept petitioners' contention because the above-quoted language is without ambiguity and applies to "real estate".  Although a boat may in some instances be treated the same as real estate for tax purposes, that is not the case in section 469(i).  Accordingly, we sustain respondent's determination that petitioners are not entitled to apply boat rental income against nonpassive income.

Alternatively, petitioners contend that they were involved in a nonpassive activity with respect to the boat.  The facts in this case belie any such contention.  Mr. Beasley was not licensed to take people out and engage in charter activity.  In effect, he engaged in fishing trips with friends and family and

they paid him in order to defer the cost of the operation of his boat. Although it was his intent and hope to engage in a charter business after he retired from his full-time job sometime after 2002, his activity in 2002 was preliminary to any such business; and a good portion of his expenditures would have been considered startup expenses that he would be required to capitalize.

Respondent determined in the notice of deficiency that Mr. Beasley's loss from rental of the boat was not deductible in 2002 because of section 469 limitations. Respondent also determined that Mr. Beasley could apply the loss against passive income in the years after 2002. Respondent did not determine that the deductions that generated the loss were unsubstantiated. Respondent questioned the underlying substantiation only in the setting of petitioners' alternative argument that the income, and therefore the loss, was nonpassive or a Schedule C business item. Because we have decided that Mr. Beasley's boat-rental activity resulted in a passive loss, respondent's original determination is sustained.

Petitioners raise one additional argument in connection with the boat. They contend that if they are not entitled to a passive or nonpassive loss, the boat should be treated as a "qualified home" for purposes of deducting the mortgage interest paid on the boat loan. Petitioners deducted $3,032 in mortgage interest with respect to the boat for 2002. Section 163(h)

generally provides that no deduction is allowed for personal interest paid during a taxable year.  An exception to that general rule is any qualified residence interest.  Sec. 163(h)(2)(D).  Interest paid on a main home or a second home is deductible as an itemized deduction, subject to certain limitations.  For this purpose, the term "residence" can include a boat.  Secs. 163(h)(4)(A)(i)(II), 280A(d)(1), (f)(1)(A).

Petitioners claim the boat as a second home for the  second home mortgage interest deduction.  If a second home is rented or held out to rent to others, a taxpayer must meet special requirements before interest is deductible.  Those special requirements are set forth in section 280A(d).  Where the home (boat) is rented, as petitioners claimed in this case, a taxpayer must use that home for more than 14 days or more than 10 percent of the number of days during the year that the home is rented at a fair rent, whichever is longer.  Sec. 280A(d)(1).  Because petitioners reported $2,800 of rental income, they must show that they meet the section 280A(d) requirements.  Petitioners have not shown that they meet these requirements, and therefore their argument that the mortgage interest is deductible must fail.

II.  Daycare Food Deduction

Petitioners claimed $7,118 as an expense for food that was provided to the children in Mrs. Beasley's daycare business.

They arrived at the amount by estimating the food expenses that were personal and business, because daycare food purchases were not segregated from other food purchases. Petitioners have been able to show receipts for food greater than the $7,118 claimed and the $3,559 respondent allowed. Respondent's allowance is based on a 50-percent personal--50-percent business allocation. Because petitioners claimed about 70 percent of their actual food purchases, respondent's 50-percent allowance equals approximately 35 percent of total food purchases.

Under section 162(a) petitioners are entitled to deduct ordinary and necessary business expenses. Providing meals to children in the setting of a daycare business can be an ordinary and necessary business expense. The question is whether petitioners have shown that the amount claimed was expended for food for the children.

Petitioners attempted to estimate the amount of food used for the daycare business by using a percentage of total food purchases. It is not clear, however, that the percentage petitioners used reasonably reflects the cost of the food used to feed the children in the daycare business. Petitioners caused this dilemma because they did not take care to purchase food separately or to segregate purchases for daycare and personal use. On the record in this case, petitioners have not

shown that they are entitled to any amount greater than the $3,559 respondent allowed.

III. Payments to and Purchases Made for Petitioners' Children

Petitioners' children assisted Mrs. Beasley in the operation of the daycare center, and petitioners deducted $3,145 as payment for their labor. Under section 162(a) petitioners are entitled to deduct ordinary and necessary business expenses. The cost of labor to assist in the operation of the business would certainly be an ordinary and necessary business expense. The problem we confront is that petitioners did not pay their children in the same way they would have paid third parties.

Instead of making a cash or check payment based on an hourly rate times the hours worked, petitioners provided some cash and mostly purchased items for their children. Further complicating their approach, petitioners did not keep records or provide reliable estimates of the hours worked and failed to segregate those items that were payments for work performed and items that petitioners would have purchased to support their children whether they worked in the daycare or not.

At the end of the year petitioners went through their check book and/or credit card receipts and picked out all purchases for their children. The amounts that were clearly for their children's support (as opposed to payment in exchange for their

labor) were not carefully extracted.  Instead, petitioners reduced the total by approximated rough amounts such as $3,000 or $1,000.

We are convinced that petitioners' children did assist in the operation of the daycare business, but we are unable to accept or adopt petitioners' approach to arriving at the deductible amount of their compensation.  It is noted that petitioners' dilemma is of their own making because they failed to keep specific or accurate records of the hours worked by their children and the amounts paid for their children's services. With that in mind, we find that petitioners are entitled to $2,000 of the $3,145 claimed as a deduction for their children's labor in the daycare business.

IV.  Use of Motor Vehicles

Petitioners deducted $4,502 as a business expense for the use of a truck and an automobile in the operation of their boat rental and daycare business and for Mr. Beasley's job.  With respect to the use of listed property such as a truck or an automobile, in addition to the section 162 requirement that the expense be ordinary and necessary, section 274(d) requires more stringent recordkeeping to show entitlement to a deduction. Secs. 274(d)(4), 280F(d)(4)(A)(i).  In particular, a taxpayer must show with specificity the business use of the listed property by means of logs and other detailed records.

Petitioners failed to keep such records of their claimed truck and automobile expenses.

In spite of the fact that petitioners did not have the records required by section 274(d), respondent allowed petitioners a $2,251 deduction, one-half of the claimed truck and automobile expense deduction.  Under the circumstances, the Court is not in a position to improve on respondent's largess. Accordingly, we hold that petitioners are entitled to the $2,251 respondent allowed.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>